**FILED**
JAN 22 2020
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY CLERK

Mark Aussieker
8830 Olive Ranch Lane
Fair Oaks, CA 95628
Phone: 916-705-8006
aussieker1@gmail.com

*in pro per*

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

MARK AUSSIEKER,

Plaintiff,

v.

VISIONARY INVESTORS INC, BRYAN ARTURO RIVEROS CESAR
Defendant(s)

No. 2:20-CV-158 TLN KJN PS

**COMPLAINT FOR DAMAGES**
Trial by Jury not requested

1. Plaintiff Mark Aussieker ("Plaintiff" or "Mr. Aussieker") brings this action to enforce the consumer-privacy provisions of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, a federal statute enacted in 1991 in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 745 (2012).

2. The Defendants have placed telemarketing calls to a telephone number Mr. Aussieker owned without consent.

3. This Complaint also relates to the Defendants making telemarketing calls to individuals in the absence of any "do not call" policy or training, as well as making such calls to individuals who previously indicated that they did not want to receive telemarketing calls when they registered their number on the national do not call registry.

**PARTIES**

4. Plaintiff Mark Aussieker is an individual and resident of the state of California, and this

1

District.

5. Defendant VISIONARY INVESTORS INC ("VISIONARY") is a California corporation. VISIONARY is a "person" as defined by 47 US.C. § 153 (39).

6. Defendant BRYAN ARTURO RIVEROS CESAR ("BRYAN") is a natural person and corporate officer of VISIONARY INC.

## Jurisdiction & Venue

7. The Court has federal question subject matter jurisdiction over these TCPA claims. *Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740 (2012).

8. Venue is proper pursuant to 28 U.S.C. § 1391 (b)(2) because the Plaintiff is a resident of this district, which is where he received the illegal telemarketing calls that are the subject of this lawsuit.

9. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred within this District.

10. This Court has personal jurisdiction over the parties because Defendants systematically and continually have conducted business in the State of California. Likewise, Plaintiff's rights were violated in the State of California and his claims arose out of his contact with Defendants from California.

## TCPA Background

11. TCPA Background In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

12. The national Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2). A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id*.

13. The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry. 47 U.S.C. § 227(c); 47C.F.R. § 64.1200(c)(2).

14. A person whose number is on the Registry, and who has received more than one telephone call within any twelve-month period by or on behalf of the same entity in violation of the TCPA, can sue the violator and seek statutory damages. 47 U.S.C. §227(c)(5).

15. The regulations exempt from liability a caller who has obtained the subscriber's signed, written agreement to receive telephone solicitations from the caller. 47 C.F.R. § 64.1200(c)(2)(ii). That agreement must also include the telephone number to which the calls may be placed. Id.

16. Any person whose receives any phone in violation 47 U.S.C. § 227(b)(1)(A) can sue the violator and seek statutory damages. 47 U.S.C §227(b)(3)(B). This is commonly refered to as the auto dialer statue or ATDS.

17. 47 U.S.C. § 227(b)(1)(A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice— (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call, unless such call is made solely to collect a debt owed to or guaranteed by the federal government."

18. Automatic Telephone Dialing System, which the statute defines as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 USC 227(a)(1). Notwithstanding this limited definition, the Ninth Circuit ruled in Marks v. Crunch San Diego, LLC that an ATDS means more than what the statute says. The question is whether, in order to be an ATDS, a device must dial numbers generated by a random or sequential number generator or if a device can be an ATDS if it merely dials numbers from a stored list."

19. The Court answered in the affirmative merely that if the dialer dials numbers from a

3

1  stored list, it is considered an ATDS. Marks decision is now the law of the land in the 9th circuit as of February 19th 2019 after the parties settled.

20.   All a plaintiff needs to show is that a call or text message was made using an auto dialer to a number assigned to cellular service, or that the calling party was charged for the call. In this case, plaintiff received calls sent to his cellular phone.

21.   In Sengenberger v. Credit Control Services, Inc[1]., the court held that "intentionally" making phone calls that violated the TCPA was sufficient to warrant treble damages because "although neither the TCPA nor the FCC regulations define the terms 'willfully or knowingly'...courts have generally interpreted willfulness to imply only that an action was intentional. Further, Sengenberger noted that while the TCPA does not define willful, the Communications Act of 1943, of which the TCPA is a part, defines willful as "the conscious or deliberate commission or omission of such act, irrespective of any intent to violate any provision[ ], rule or regulation."

## Factual Allegations

22.   Plaintiff MARK AUSSIEKER's phone number ending in 8006 is a cellular phone.

23.   Plaintiff MARK AUSSIEKER's phone number ending in 8006 was added to the Do Not Call list in February 2003. SEE EXHIBIT A

24.   Plaintiff has maintained the same cell phone ending in 8006 continuously since 2002.

25.   PLAINTIFF does not have a "landline" and primarily uses his cell phone as his home phone. He is a residential subscriber.   He pays the phone bill with personal funds.

26.   VISIONARY and BRYAN's holds himself out to be in the business of real estate investing. Bryan's instagram page links to VISIONARY's website which boasts over 1000 completed real estate transactions [2]. A search of the grantee index in Sacramento and Los Angeles County did not show that VISIONARY had ever purchased a house.

27.   Plaintiff is informed and believes that VISIONARY and BRYAN are real estate

---

[1] SENGENBERGER v. CREDIT CONTROL SERVICES, INC. (N.D.Ill. 5-5-2010)
[2] https://www.visionarynvestors.com/about-us

wholesalers.

28. Wholesaling real estate is when an investor puts a home under contract "Ties up" with the intent to assign that contract to another buyer. The wholesaler doesn't plan on fixing up or selling the property. Instead, they market the purchase agreement to potential buyers for a higher price than they have the property under contract for.

29. One of VISIONARY and BRYAN's strategies for marketing its services is placing telemarketing robocalls to those who have not consented to receive such solicitations, including Plaintiff.

30. Plaintiff has Google Fi for his cellular service. Google Fi has a feature which allows for calls to his Google Fi number to also go to other numbers that plaintiff designated. Plaintiff designated a virtual phone number, which then forwarded the calls to a voice over ip line. Therefore, when his cell phone rings his VOIP rings as well.

31. Plaintiff compiled a chart of the calls sent to his cell phone as recorded by kall8.com, his virtual number that plaintiff designated to ring simultaneously ring when his cell phone rings.

| Date | Time (Pacific) | Caller id | ATDS | DNC |
|---|---|---|---|---|
| 01/20/2020 | 5:00:11 PM | 916-580-2997 | YES | YES |
| 01/20/2020 | 5:00:05 PM | 916-655-2070 | YES | YES |
| 01/20/2020 | 4:57:13 PM | 916-655-2070 | YES | YES |
| 01/20/2020 | 4:57:05 PM | 916-580-2997 | YES | YES |

32. DEFENDANTS caused 4 telephones calls to be made to Plaintiffs cell phone number that were made with an auto dialer and to a number listed on the do not call registry.

33. DEFENDANTS willfully and knowingly made the phones calls.

34. The 1st call came through at 4:57:05 PM which also caused Plaintiffs VOIP line to

simultaneously ring.   A 2nd call was sent 8 milliseconds after the 1st call.   Plaintiffs VOIP telephone then displayed two incoming calls on his voip.

35.  Plaintiff tried to answer his cell phone, but the call disconnected after either one or two rings. Defendant disconnected all the calls before 4 rings, which is a violation of 47 C.F.R. §64.1200(a)(6)

36.  The 3rd call came through at 5:00:05 PM which also caused his VOIP line to simultaneously ring.   A 2nd call was sent 6 milliseconds after the 1st call.   Plaintiffs VOIP telephone then displayed two incoming calls on his voip.

37.  Plaintiff tried to answer his cell phone again, but the call disconnected after one or two rings.

38.  The timing of the calls is indicative that an Autodialer was used.  The calls were strategically placed a few milliseconds apart, ruling out human involvement.

39.  Plaintiffs attaches a screen shot showing the missed calls.



6

40. Plaintiff called back 916-655-2070 and heard the following message "Hi- This is Sarah, I am a real estate investor and I called about your property. If your interested in selling please press one, If you want to be deleted from the list press 2"

41. Plaintiff called back 916-580-2997 and heard the following pre-recorded message "Hi- This is Sarah, I am a real estate investor and I called about your property. If your interested in selling please press one, If you want to be deleted from the list press 2"

42. Plaintiff noticed the exact same message for both of the phone numbers and pressed 1 to connect to an operator. He was then connected to Bryan who identified himself as a real estate investor. Plaintiff feigned interest to identify the caller. BRYAN did not know which property he was calling Plaintiff about and admitted to plaintiff he was just looking for people who wanted to sell. Plaintiff supplied BRYAN the details of a property that his wife owns. Bryan provided Plaintiff with his cell phone number 909-446-9119. Plaintiff traced BRYAN's cellphone number and found the corresponding webpage for visionarynvestors.com and his instagram page which promotes his financial successes as a wholesaler (picture of him posing next to a porche).

43. The fact that VISIONARY and BRYAN created a message that states "I called about your property" is indicative that VISIONARY and BRYAN knew that people would be calling back after seeing missed calls- and that the missed calls were purposely made to generate a call back.

44. The fact that the message states "I called about your property" is indicative that VISIONARY and BRYAN knew that the calls were being made. The message creators knew that people are calling back to find out why they had a missed call.

45. The fact that the message states "If you want to be deleted from the list press 2" is indicative that VISIONARY and BRYAN knew that the calls were impersonal in nature, being made en masse- and had to set up a way to handle opt out without disclosing the name of the business.

46. Defendant used an "automatic telephone dialing system" as defined by 47 U.S.C. § 227(a)(1) to place its call to Plaintiff seeking solict people who wanted to sell their homes.

47. Excessive abandoned calls are the result of using a predictive dialer[3]. A predictive dialer is an ATDS.

48. Defendants leveraged the economic benefit of an automatic dialer at Plaintiffs expense.

49. Defendant's calls constituted calls that were not for emergency purposes as defined by 47 U.S.C. § 227(b)(1)(A).

50. During all relevant times, Defendant did not possess Plaintiff's "prior express consent" to receive calls using an automatic telephone dialing pursuant to 47 U.S.C. § 227(b)(1)(A). The calls are impersonal advertisements: they do not address Plaintiff personally and they are only meant to generate calls to Defendant business.

51. Plaintiff declares that he has never heard of Defendant Visionary, visited any location operated by said Defendant prior to the harassing and annoying calls, nor provided his cellular telephone numbers to said Defendant or consented to receive calls from Defendant. Plaintiff also has had no prior business relationship with Defendant. Plaintiff had no reason to be in contact with Defendant VISIONARY or BRYAN, nor has he ever purchased any kind of product or service

52. Such calls constitute solicitation calls pursuant to 47 C.F.R. § 64.1200(c)(2) as they were attempts to promote or sell Defendant's service of buying a property and selling the purchase agreement.

53. The only requirement to enforce the TCPA is the indentify of the party responsible for the calls.

54. Mr. Aussieker's concrete injury as it relates to the *Spokeo* decision is loss of productivity for answering the call, decreased battery life, the nuisance of receiving a telephone call and having to wait for the other party to pick up the phone, defendants bothering him with unrequested solicitations.

### VISIONARY INC AND BRYAN ARTURO RIVEROS CESAR INVOLEVEMENT AND KNOWLEDGE

55. At all times relevant to the claims alleged herein, BRYAN CESAR was the sole

---

[3] *2002 Notice*, 17 FCC Rcd at 17475-76, para. 150-152.

corporate officer and executive in charge of VISIONARY, and each and every call was placed on behalf of the corporate entity owned by BRYAN CESAR.

56. BRYAN CESAR was aware that automated calls were being placed on behalf of his corporation and himself en masse to people, including Plaintiff. BRYAN personally answered the call when plaintiff pressed 1 to be connected to an operator.

57. As the corporation's senior-most executive, BRYAN CESAR had the power to refrain from using abusive robocalling as a marketing tool.

58. As these corporation's, senior-most executive, BRYAN CESAR had the power to fire the managers, affiliates, agents, and employees (if any) taking part of the day-to-day operations of these illegal robocalling operations. Despite this knowledge of illegal telemarketing, BRYAN CESAR continued to use the services which resulted in the Plaintiff being called additional times on his behalf and at his direction.

59. If the corporate officers/shareholders were personally involved in the illegal activity they are personally liable because they did the act themselves. See Texas v. AmBlastfax[4] "Neither the TCPA nor the common law requires knowing or willful violations of the TCPA as a prerequisite to officer liability[5],""Direct participation or authorization is sufficient[6]." BRYAN CESAR directly participated and authorized the calling

---

[4] Texas v. American Blast Fax, Inc., 159 F. Supp. 2d 936 (W.D. Tex. 2001)
[5] *Physicians Healthsource, Inc. v. A-S Medication Solutions LLC Memorandum and Opinion*
[6] ibid

9

CAUSES OF ACTION

## COUNT 1

**Violation of the Telephone Consumer Protection Act, 47 U.S.C.**

**§227(c)(5)** – Telemarketing Solicitations to National Do Not Call Registrants

60. Defendant placed 4 telemarketing calls to the Plaintiff.

61. Defendant did so despite the fact that the Plaintiff previously listed his telephone on the national do not call registry, which is a violation of 47 C.F.R. §64.1200(c)(2).

62. Defendant did so despite not training its personnel on the existence or use of any internal "do not call" list which is a violation of 47 C.F.R. §64.1200(c)(2).

63. Defendant disconnected all the calls before 4 rings, despite 47 C.F.R. §64.1200(a)(6), which prohibits Disconnecting an unanswered telemarketing call prior to at least 15 seconds or four (4) rings.

64. Defendant failed to provide a copy of its internal do not call policy to plaintiff, Defendant did so despite 47 C.F.R. §64.1200(d)(1).

65. Accordingly, Plaintiff is entitled to an award of $500 in statutory damages for each violative telephone call pursuant to 47 U.S.C. § 227(c)(5).   Defendant violated multiple regulations promulgated under 47 U.S.C. § 227(c)(5)(B).

66. Plaintiff s entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(c)(5)(C).

## COUNT 2

**Violation of the Telephone Consumer Protection Act, 47 U.S.C.**

**§227(b)(1)(A)(iii)** – Auto Dialer

67. Plaintiff hereby incorporates, as if fully rewritten herein, all foregoing paragraphs.

68. Defendant's own conduct (by placing a Call to Plaintiff's telephone using an automated

10

dialing system, violated 47 C.F.R. § 64.1200(a)(2) and 47 U.S.C. § 227**(b)(1)(A)(iii)** and, therefore, Plaintiff is entitled to an award of statutory damages in the minimum amount of $500 for this violation.

69. As a result of Defendant's knowing and/or willful violations of 47 U.S.C. § 227(b), Plaintiff is entitled to an award of $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests judgment against VISIONARY and BRYAN CESAR for the following:

70. Injunctive relief prohibiting such violations of the TCPA by Defendants in the future.

71. For an order finding for plaintiff in all counts.

72. For an order finding the defendant knowingly and willfully violated TCPA

73. An award of $500 per call for the 4 calls which amounts to $2,000 in statutory damages as prescribed under 47 U.S.C. § 227(c)(5)(B).  This amount be tripled to $6,000 as prescribed under 47 U.S.C. § 227(c)(5)(C).

74. An award of $500 per call for the 4 calls which amounts to $2,000 in statutory damages as prescribed under 47 U.S.C. § 227(b)(3)(B) This amount be tripled to $6,000 as prescribe under 47 U.S.C. § 227(b)(3)(C)

75. TCPA intentional violations jointly and severally against the corporation and individual for the 4 calls.

76. Any other relief the court deems proper.

Respectfully Submitted this 21st Day of January, 2020.

11

Certification and Closing Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11. I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: 22th Day of January, 2020

Signature of Plaintiff

Printed Name of Plaintiff _Mark Aussieker_

# EXHIBIT A

 **Mark Aussieker <aussieker1@gmail.com>**

## National Do Not Call Registry - Your Registration Is Confirmed

**Verify@donotcall.gov** <Verify@donotcall.gov>  Thu, Sep 5, 2019 at 3:16 PM
To: aussieker1@gmail.com

Thank you for registering your phone number with the National Do Not Call Registry. You successfully registered your phone number ending in 8006 on June 28, 2003. Most telemarketers will be required to stop calling you 31 days from your registration date.

Visit https://www.donotcall.gov to register another number or file a complaint against someone violating the Registry.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
\*\*\*\*\*\*

Please do not reply to this message as it is from an unattended mailbox. Any replies to this email will not be responded to or forwarded. This service is used for outgoing emails only and cannot respond to inquiries.